**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SKILLNET SOLUTIONS, INC., a California corporation,<br><br>　　　　　　　Plaintiff,<br>　　v.<br><br>ENTERTAINMENT PUBLICATIONS, LLC, a Delaware LLC, and DOES 1-10,<br><br>　　　　　　　Defendants. | Case No.: C 11-4865 PSG<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND GRANTING DEFENDANT'S MOTION TO TRANSFER**<br><br>**(Re: Docket No. 5)** |

Plaintiff Skillnet Solutions, Inc. ("Skillnet") brings this action for breach of contact against Defendant Entertainment Publications, LLC ("Entertainment") and Does 1-10. Entertainment moves to dismiss the complaint for improper venue pursuant to Fed. R. Civ. P. 12(b)(3), or in the alternative, to transfer the case to the Eastern District of Michigan. Skillnet opposes the motion. On January 31, 2011, the parties appeared for hearing. Having reviewed the briefs and considered the arguments and evidence presented, the court DENIES Entertainment's motion to dismiss and GRANTS Entertainment's motion to transfer.

# I. BACKGROUND[1]

Skillnet is a California corporation headquartered in Sunnyvale, California.[2] Skillnet provides ecommerce business consulting services and software development for retail and government organizations.[3] Skillnet markets and provides its consulting and software development services nationwide. Skillnet also maintains offices and employees in India, London, and United Arab Emirates. Entertainment is a Delaware Limited Liability Company with its principal place of business in Troy, Michigan.[4] Entertainment is a discount and promotions company that conducts business nationwide, but maintains its headquarters, operations, and the majority of its personnel in Michigan.[5] Entertainment is registered with the California Secretary of State to do business in California.[6]

In the spring of 2010, Entertainment contacted Skillnet regarding Entertainment's needs relating to software configuration for its ecommerce business and other project workstreams. After initial meetings in Michigan in June 2010, Entertainment sent Skillnet a first purchase order ("PO") for services relating to the development of a Statement of Work ("SOW") for up to $85,000.[7] Skillnet then began developing a Services Agreement and SOW for Entertainment under the first PO. In July 2010, the parties negotiated and executed a Services Agreement setting forth the terms

---

[1] The court draws the following from the parties' briefs and accompanying declarations, as well as the complaint and documents incorporated therein by reference. The court also grants both parties' requests for judicial notice on the basis that the authenticity of the attached documents is not in dispute and may be verified by resort to the public record. *See* Docket Nos. 6 (Def.'s Request for Judicial Notice in Support of Mot. To Dismiss or Transfer); Docket No. 26 (Pl.'s Request for Judicial Notice in Opp'n to Def.'s Mot.).

[2] Docket No. 1 (Notice of Removal), Ex. A ¶ 1 (Compl.).

[3] *See* Docket No. 21 ¶ 2 (Damle Decl.).

[4] Docket No. 10 ¶ 2 (Laura Decl.); Docket No. 6 (Def.'s Request for Judicial Notice), Ex. 3.

[5] Docket No. 7 ¶ 2 (Periard Decl.); Docket No. 8 ¶ 2 (Harrison Decl.).

[6] Docket No. 26 (Pl.'s Request for Judicial Notice), Ex. A.

[7] Docket No. 25 (Pahwa Decl.), Ex. A.

of the relationship between Entertainment and Skillnet and leaving out only matters to be addressed by the SOW.[8] In August 2010, Entertainment prepared a second PO for the additional work needed to complete the SOW, up to a total of $300,000.[9] After continued work defining the scope and requirements of the project, in December 2010 the parties executed the SOW.[10] The SOW covered the project methodology and deliverables, staffing, respective responsibilities of the parties, and cost – including service rates and travel plans for work performed by Skillnet.[11]

During the course of project development, a team of six or seven Skillnet representatives traveled regularly to Michigan and spent the majority of the week there. After completion of the SOW, travel to Michigan decreased, with only three to four Skillnet representatives regularly traveling for a few days a week to Entertainment's site.[12] According to Skillnet, work continued according to the terms of the SOW and Services Agreement. But by May 2011, Entertainment had failed to make payments totaling about $2,484,000.[13] After the parties failed to resolve the issues relating to work roll-out and payment, Entertainment terminated the relationship pursuant to the terms of the Services Agreement.[14]

The parties dispute the significance of language in the POs and Services Agreement for the purpose of determining the proper venue and forum for this dispute. At issue are sections 16E and F of the POs' "terms and conditions," which state in relevant part:

---

[8] *See* Docket No. 7, Ex. A, Art. II, Sec. 2.5(d) (Services Agreement).

[9] Docket No. 25, Ex. B.

[10] *See* Docket No. 7, Ex. B (Statement of Work).

[11] *See* Docket No. 20 at 8-9 (Pl.'s Opp'n to Def.'s Mot. To Dismiss or Transfer); Docket No. 5 at 4 (Def.'s Mot. To Dismiss or Transfer).

[12] *See* Docket No. 20 at 9.

[13] *See id.*; Docket No. 22 ¶ 5 (Grover Decl.).

[14] *See* Docket No. 20 at 10.

3
Case No.: 11-4865 PSG
ORDER

> This PO Contract shall be construed and controlled by the laws of the State of Michigan and Vendor [Skillnet] consents to exclusive jurisdiction and venue in the federal and state courts located in or nearest to Oakland County, Michigan. Vendor waives all defenses of lack of personal jurisdiction and forum non conveniens. *** No PO Contract is valid or binding unless signed by an authorized representative of Entertainment Publications.[15]

The parties agree that neither PO was signed by a representative of Entertainment,[16] but disagree over the significance of that omission. According to Skillnet, the POs were understood to be "interim documents" used merely to allow Skillnet to be paid until the Services Agreement and SOW were formulated.[17]

Regarding integration of the POs into the Services Agreement, the Agreement states:

> Upon the effective date of this Agreement, the Purchase Orders(s) (even those issued prior to the effective date of this Agreement) shall be governed by the terms of this Agreement. *** This Agreement constitutes the entire and exclusive statement of the agreement between the parties with respect to its subject matter and there are no oral or written representations, understandings or agreements relating to this Agreement which are not fully expressed in the Agreement. *** All … documents … referenced in this Agreement … and each Purchase Order are an integral part of this Agreement. In the event of a conflict between the terms and conditions of this Agreement and a Purchase Order, the Purchase Order shall be controlling with respect to those transactions covered by that Purchase Order.[18]

The parties also dispute to what extent the work conducted by Skillnet took place in Michigan, California, or elsewhere. According to Skillnet, after the SOW was finalized, Skillnet had "dozens of people working on the project in California and in India" under the guidance and direction of Skillnet's California employees.[19] Specifically, Skillnet claims that it had 37 people based in India and 32 based in the United States working on the project, of which it states that only

---

[15] *See* Docket No. 7, Exs. H and I (Entertainment Publications Purchase Order(s)).

[16] *See* Docket No. 25 ¶ 9; Docket No. 27 at 3 (Def.'s Reply in Support of Mot. To Dismiss or Transfer).

[17] *See id.* ¶¶ 5, 9, 11.

[18] *See* Docket No. 7, Ex. A, Art. I, 1.1; Art. 6, 6.16 (Services Agreement).

[19] *See* Docket No. 20 at 9; Docket No. 23 ¶ 10 (Cantrell Decl.); Docket No. 25 ¶15.

4
Case No.: 11-4865 PSG
ORDER

three or four were at Entertainment's site in Michigan, on average, during the majority of the project.[20] According to Entertainment, Skillnet employees were present in Michigan between June 2010 and July 2011 for all aspects of the project, including to prepare and configure source code and for "all important meetings."[21] Entertainment acknowledges that Skillnet provided offsite support through employees in California and worldwide, but asserts that "those employees' work was governed directly by the work that was occurring in Michigan."[22]

In August 2011, Skillnet brought suit in the Santa Clara County Superior Court, alleging breach of written contract and seeking damages in the amount of $2,484,458 plus interest.[23] On September 30, 2011, Entertainment removed the lawsuit to this court on the basis of diversity jurisdiction.[24] Entertainment's motion to dismiss or transfer soon followed.

## II. ANALYSIS

**A.   Subject Matter Jurisdiction**

Before addressing whether venue or transfer is proper, the court must determine whether it has subject matter jurisdiction over this case.[25] This is true even if the parties have not challenged jurisdiction, because "[w]ithout jurisdiction, the court cannot proceed at all in any cause."[26] Although Skillnet does not formally challenge jurisdiction, it notes that whether Entertainment is a

---

[20] *See* Docket No. 20 at 9; Docket No. 21 ¶ 5; Docket No. 25 ¶ 15.

[21] *See* Docket No. 5 at 4.

[22] *Id.*; Docket No. 10 ¶¶ 4, 5; Docket No. 8 ¶¶ 4, 10-14, 17 (Harrison Decl.), Ex. J.

[23] *See* Docket No. 1, Ex. A.

[24] *See* Docket No. 1 ¶¶ 3-5.

[25] *See Vu v. Ortho-McNeil Pharmaceutical, Inc.*, 602 F. Supp. 2d 1151, 1153 (N.D. Cal. 2009) (citing *Bookout v. Beck*, 354 F.2d 823, 825 (9th Cir. 1965)).

[26] *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) (quoting *Ex Parte McCardle*, 7 Wall. 506, 514 (1868)). *See also Gonzalez v. Thaler*, --- S.Ct. ---, 2012 WL 43513, at *5 (2012) ("When a requirement goes to subject matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented.") (citing *U.S. v. Cotton*, 535 U.S. 625, 630 (2002)).

5
Case No.: 11-4865 PSG
ORDER

citizen of Delaware and Michigan under 28 U.S.C. § 1332 is "a point which has yet to be determined and this action may be subject to a motion to remand unless EP can prove it satisfies diversity jurisdiction requirements."[27]

Based on the pleadings and accompanying documentation subject to judicial notice, the court is satisfied that removal on the basis of diversity jurisdiction was proper. Skillnet's initial complaint and filings in response to this motion confirm that it is a California corporation with its principal place of business in Santa Clara County.[28] Skillnet thus is a citizen of California.[29] Skillnet also alleges in its complaint that Entertainment is an LLC with a principal place of business in Michigan and qualified to do business in California.[30] Skillnet alleges damages of over $2 million.[31]

Entertainment confirms these facts in its notice of removal, stating that Entertainment is a Delaware LLC with its principal place of business in Michigan.[32] Entertainment further states that it has no members who are citizens of California and as an LLC has never been organized under California's laws.[33] Skillnet has not disputed these representations or offered evidence to the contrary. Entertainment thus is not a citizen of California, but of the state(s) in which it has

---

[27] *See* Docket No. 20 at 11.

[28] *See* Docket No. 1 ¶ 1, Ex. A.

[29] For the purpose of determining diversity of citizenship, a corporation is deemed to be a citizen of every state in which it is incorporated and of the state where it has its principal place of business. *See* 28 U.S.C. § 1332(c).

[30] *See* Docket No. 1 ¶ 2.

[31] *See id.* ¶¶ 8-9, 11-12.

[32] *See* Docket No. 1 ¶ 3; Docket No. 6 (Def.'s Request for Judicial Notice), Exs. 2, 3 (certificates of Entertainment Publications, LLC formation in the State of Delaware).

[33] *See* Docket No. 1 ¶ 3.

6
Case No.: 11-4865 PSG
ORDER

members.[34] Because complete diversity of citizenship exists and the complaint alleges more than $75,000 in controversy, the court has subject matter jurisdiction.

**B. Motion to Dismiss for Improper Venue**

Whether Entertainment can prevail on its Rule 12(b)(3) motion turns on whether the governing contract contains a valid forum selection clause specifying an alternate forum. Entertainment argues that dismissal is proper because no statutory basis for venue has been met, and because Entertainment expressly negotiated with Skillnet for any disputes to be resolved by the laws of Michigan and in a Michigan forum. Skillnet responds that Entertainment has waived any objections to venue by removing the case to this court, but even without waiver, venue would be proper because Entertainment is subject to personal jurisdiction in this district.

It is generally the plaintiff's burden to demonstrate proper venue in the chosen district.[35] Venue in federal court is governed by 28 U.S.C. § 1391.[36] Following removal from state court, however, courts have held that Section 1391 does not apply.[37] This is because removal, if proper,

---

[34] In contrast to the determination of citizenship for a corporation, the citizenship of other entities created by state law – such as a limited liability corporation – is to be determined based on "the citizenship of no less than all of the entity's members." *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990). *See also Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) (holding that notwithstanding their corporate traits, LLCs are to be treated like partnerships and other artificial entities for purposes of diversity jurisdiction, whereby the citizenship of the LLC depends upon the citizenship of all of its members).

[35] *See Koresko v. RealNetworks, Inc.*, 291 F. Supp. 2d 1157, 1160 (E.D. Cal. 2003); *Whiteman v. Grand Wilea Resort*, C 98-04442 MMC, 1999 WL 160344, at *1 (N.D. Cal. Mar. 17, 1999) (citing *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979) (reversing denial of summary judgment based on improper venue because plaintiff did not meet its burden of showing that venue was properly laid in the district)).

[36] 28 U.S.C. § 1391(a) provides that a civil action subject to diversity jurisdiction may be brought in:
> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred …, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

[37] *See Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665 (1953) ("[O]n the question of venue, Section 1391 has no application to this case because it is a removed action. The venue of removed actions is governed by 28 U.S.C. § 1441(a)."). *See also PT United Can Co. Ltd. v. Crown Cork*

7
Case No.: 11-4865 PSG
ORDER

automatically satisfies federal venue requirements. Under the removal statute, venue is proper if removal is to the district in which the state action was pending and the federal court has jurisdiction.[38] This is true regardless of whether venue was proper in the state court to begin with.[39] A defendant who properly removes to federal court therefore meets the venue requirements of § 1441, in effect canceling any improper venue objection under Fed. R. Civ. P. 12(b)(3).[40]

The existence of a valid forum selection clause, however, may create an exception to this general rule. "[W]here the underlying contract designates a specific forum, federal courts generally uphold the parties' designated forum, rather than merely requiring compliance with § 1441."[41] Entertainment contends that the exception applies here, because its contractual agreement with Skillnet included both a choice of law and forum selection provision. Skillnet disputes this

---

*Seal Co., Inc.* 138 F.3d 65, 72 (2d. Cir. 1998); *Hollis v. Florida State Univ.*, 259 F.3d 1295, 1300 (11th Cir. 2001); *Lynch v. Vanderhoef Builders*, 228 F. Supp. 2d 644, 645 (D. Md. 2002).

[38] *See* 28 U.S.C. § 1441(a). *See also Vu*, 602 F. Supp. 2d at 1156.

[39] *See id.* § 1441(e) ("The court to which such civil action is removed is not precluded from hearing and determining any claim in such civil action because the State court from which such civil action is removed did not have jurisdiction over that claim."); *IBC Aviation Servs., Inc. v. Compañia Mexicana de Aviacion, S.A.*, 125 F. Supp. 2d. 1008, 1013-14 (N.D. Cal. 2000) (explaining that by amending the removal statute to include § 1441(e), Congress altered the long-standing rule that federal jurisdiction in removal was "derivative" of and dependant on proper venue under the state law). *See also Black v. JCPenny Life Ins. Co.*, No. C 01-4070 SI, 2002 WL 523568, at *2 (N.D. Cal. Apr. 1, 2002) (noting a federal district court may assert jurisdiction based on proper removal under 28 U.S.C. § 1441, even if the state court venue was improper).

[40] There is some split of authority regarding whether removal pursuant to § 1441 technically results in a "waiver" of the improper venue defense. *See Tokio Marine & Fire Ins. Co. v. Nippon Express U.S.A. Inc.*, 118 F. Supp. 2d 997, 999-1000 (C.D. Cal. 2000) (comparing case law and commentary and noting they are "less than consistent or clear"). Whether deemed a waiver or not, the effect on an improper venue claim following removal seems to be the same, unless a party establishes a contractual basis for a different forum. *See, e.g.*, *IBC Aviation Servs., Inc. v. Compania Mexicana de Aviacion, S.A.*, 125 F. Supp. 2d. 1008, 1013 (N.D. Cal. 2000); *Black v. JCPenny Life Ins. Co.*, No. C 01-4070 SI, 2002 WL 523568, at *2 (N.D. Cal. Apr. 1, 2002) (denying defendant's motion to dismiss for improper venue because removal was proper under 28 U.S.C. § 1441, and so even if not "waived," defendant's motion to dismiss fails on its merits).

[41] *IBC Aviation Servs., Inc.*, 125 F. Supp. 2d. at 1013. *See also Tokio Marine & Fire Ins. Co.*,118 F. Supp. 2d at 999 ("[D]efendants do not waive the right to challenge venue based upon a forum selection clause simply by filing a removal petition.") (citing *Soil Shield Int'l, Inc. v. Lilly Indus., Inc.*, 1998 WL 283580 (N.D. Cal. 1998).

8

Case No.: 11-4865 PSG
ORDER

interpretation of the parties' contractual arrangement. It is thus necessary to determine whether a valid forum selection clause requires Skillnet to bring its legal action elsewhere.

In resolving a motion to dismiss under Rule 12(b)(3) and based on a forum selection clause, the court need not accept the pleadings as true and may consider evidence outside the pleadings.[42] The court draws all reasonable inferences and resolves any factual conflicts in favor of the non-moving party.[43] The Supreme Court has held that a forum selection clause is prima facie valid and should not be set aside unless the party challenging enforcement of the forum provision can show it is "unreasonable under the circumstances."[44] Such "unreasonable circumstances" are construed narrowly, where the agreement was procured by fraud or undue influence, or enforcement of the clause would effectively deny plaintiff his day in court or contravene a strong public policy of the forum.[45] Although this body of law developed in the context of international agreements, courts have applied the same standard generally to determine enforceability of forum selection clauses.[46]

Here, the parties agree that that the Services Agreement and SOW govern the dispute at hand and contain a choice of law provision indicating any dispute shall be resolved under Michigan law.[47] The disagreement lies with the parties' respective interpretation of the effect, if any, of the

---

[42] *See Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324-25 (9th Cir. 1996) (citing *Carnival Cruise Lines v. Shute*, 449 U.S. 585 (1991)).

[43] *See Hile v. Buth-Na-Bodhaighe, Inc.*, No. C 07-00791 JSW, 2007 WL 4410774, at *1 (N.D. Cal. Dec. 14, 2007) (quoting *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004)).

[44] *See Argueta*, 87 F.3d at 325 (quoting *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)).

[45] *See id.* (citing *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972); *Carnival Cruise Lines*, 449 U.S. at 591; *Pelleport Investors, Inc. v. Budco Quality Theatres, Inc*, 741 F.2d 273, 281 (9th Cir. 1984)).

[46] *See id.* (citations omitted).

[47] Article VI, 6.15 of the Services Agreement states, "Governing Law. The rights and obligations of the parties under this agreement shall … be governed by the laws, other than choice of law rules, of the State of Michigan." *See* Docket No. 7, Ex. A, Art. VI, 6.15.

9

Case No.: 11-4865 PSG
ORDER

choice of law and other provisions referencing Michigan,[48] and especially of the venue selection language included in the POs. Entertainment points first to the POs' venue provision, which states that as the vendor Skillnet "consents to exclusive jurisdiction and venue in the federal and state courts located in or nearest to Oakland County, Michigan," and that Skillnet "waives all defenses of lack of personal jurisdiction and forum non conveniens."[49] Entertainment argues that the Services Agreement expressly incorporated the forum selection language by stating that "[a]ll … documents … referenced in this Agreement … and each Purchase Order are an integral part of this Agreement. In the event of a conflict between the terms and conditions of this Agreement and a Purchase Order, the Purchase Order shall be controlling with respect to those transactions covered by that Purchase Order."[50] Entertainment further argues that courts factor choice of law into the venue determination,[51] and that throughout their negotiations Skillnet could have but did not alter this arrangement in preparing the SOW. Entertainment does not dispute that the POs are unsigned, but argues this is not dispositive because Skillnet itself relies on the POs as the basis for its right to collect on the allegedly unpaid invoices.

Skillnet responds that Skillnet never agreed to exclusive venue in Michigan because the POs were not signed and were intended merely to serve as temporary "placeholder" documents while the parties negotiated the definitive agreements. According to Skillnet, the Services Agreement "expressly subsumes the past and future POs and makes them governed by the terms and conditions of the Services Agreement" and through its integration clause states that it is the

---

[48] Those other provisions include the definition of "Site" in the Agreement as Entertainment's headquarters in Troy, Michigan, and to the SOW's inclusion of "Entertainment's need to have onsite presence" at its headquarters in its discussion of travel expenses for Skillnet employees. *See id.*, Ex. A, Art. I, 1.2(f).

[49] *See* Docket No. 7, Exs. H and I (Entertainment Publications Purchase Order(s)).

[50] *See* Docket No. 7, Ex. A, Art. 6, 6.16.

[51] *See* Docket No. 5 at 9 (citing *Am. Comm. Lines, LLC v. Northeast Maritime Inst., Inc.*, 588 F. Supp. 2d 935, 946 (S.D. Ind. 2008)).

10
Case No.: 11-4865 PSG
ORDER

"entire and exclusive statement of the relationship of the parties."[52] Skillnet argues that the venue provision of the POs thus has no effect, especially because their terms state that "[n]o PO Contract is valid or binding unless signed by an authorized representative of Entertainment Publications."[53]

The court looks to Michigan law, per the parties' agreement,[54] in interpreting the effect of the POs' forum selection clause. As a general matter, Michigan's public policy favors the enforcement of contractual forum selection clauses.[55] Dismissal based on a forum selection clause requires interpretation and application of the contract language.[56] The court construes the contract as a whole and applies the plain language to enforce the parties' intent.[57] Here, the only place where the parties directly address forum selection is in the general "terms and conditions" of the two POs drafted by Entertainment. Without more, this boilerplate venue clause in the unsigned POs does not demonstrate a clear intent of both parties to limit venue in the event of a dispute. But the Services Agreement and SOW – negotiated at arms-length and signed by both parties – expressly integrate the POs without limitation. The Services Agreement states first that the POs shall be

---

[52] *See* Docket No. 20 at 5.

[53] *See* Docket No. 7, Exs. H and I.

[54] *See* Docket No. 7, Art. 6.15 ("Governing Law: The rights and obligations of the parties under this Agreement … shall be governed by the laws, other than choice of law rules, of the State of Michigan."). The parties also agreed during oral argument that it would be appropriate for the court to apply Michigan law in interpreting the contract at issue.

[55] *See Turcheck v. Amerifund Financial, Inc.*, 272 Mich. App. 341, 345 (2006) (citing *Offerdahl v. Silverstein*, 224 Mich. App. 417, 419 (1997)). *See also* MCL 600.745(3) (providing that a Michigan court shall exercise jurisdiction over an action where the parties have agreed in writing for exclusive jurisdiction in Michigan, unless certain exceptions apply).

[56] *See id.*

[57] *See Workmon v. Publishers Clearing House*, 118 F.3d 457, 459 (6th Cir. 1997) ("[C]ontracts must be construed as a whole: if reasonably possible, all parts and every word should be considered; no part should be eliminated or stricken by another part unless absolutely necessary.") (citations omitted); *Dobbelaere v. Auto-Owners Ins. Co.*, 275 Mich. App. 527, 529 (2007) ("The fundamental goal of contract interpretation is to determine and enforce the parties' intent by reading the agreement as a whole and applying the plain language used by the parties to reach their agreement.") (citations omitted).

11
Case No.: 11-4865 PSG
ORDER

governed by the terms of the Services Agreement,[58] and later that the POs are integrated into the Services Agreement.[59] The Services Agreement also provides that in case of a conflict between the terms of the Services Agreement and the PO, the PO is controlling with respect to the transactions that it covers.[60] Taken as a whole, the plain language of the Services Agreement thus makes clear the terms of the POs are integral to the Services Agreement and actually controlling in case of conflict. To interpret the POs as being "subsumed" by the Services Agreement, as Skillnet suggests, would require the court to ignore the unambiguous integration language that incorporates the PO into the overall governing agreement.[61]

The court therefore finds that although the Services Agreement does not address forum selection, the exclusive venue provision of the POs applies by way of the integration clause.[62] As sophisticated parties who engaged in extensive, arms-length negotiations over the terms of the Services Agreement, the court further finds no basis in which to refrain from enforcing the terms of that Agreement. Accordingly, venue in the Northern District of California is not proper. Venue is proper in Michigan, per the terms of the Services Agreement.

---

[58] *See* Docket No. 7, Ex. A, Art. I, 1.1 ("[T]he Purchase Order(s) (even those issued prior to the effective date of this Agreement) shall be governed by the terms of this Agreement.").

[59] *See* Docket No. 7, Ex. A, Art. 6, 6.16 ("[E]each Purchase Order [is] an integral part of this Agreement.").

[60] *See* Docket No. 7, Ex. A, Art. I, 1.1; Art. 6, 6.16.

[61] *Cf. Roberts v. Titan Ins. Co.*, 282 Mich. App. 339, 358 (2009) (noting that in construing a contract as a whole, "all its parts are to be harmonized so far as reasonably possible" and "no part is to be taken as eliminated or stricken by some other part unless such a result is fairly inescapable").

[62] The fact that an authorized Entertainment representative did not sign either PO is not dispositive as to enforceability of the forum selection clause. Both the SOW and Services Agreement integrate the terms of the POs – whether signed or not – and it is under those agreements that Skillnet is suing to enforce the terms of contract.

12

Case No.: 11-4865 PSG
ORDER

### D.  Motion to Transfer

Under the change of venue statute, the court may transfer a civil action to "to any other district or division where it might have been brought."[63] However, transfer to a more convenient forum pursuant to 28 U.S.C. § 1404(a) requires venue to be proper in the first instance.[64] "Where venue is *improper*, a district court must either dismiss the case or transfer it 'in the interests of justice' to an appropriate jurisdiction." [65] Having determined that venue is not proper in this district, the court nevertheless finds transfer to the Eastern District of Michigan to be in the interest of justice and proper under 28 U.S.C. § 1406(a).[66]

Section 1406(a) provides an alternative to the harshness of dismissal under Section 1404(a), where venue is found to be improper.[67] Based on the court's determination that the forum selection clause applies, Plaintiffs are limited to bringing their claims in the "federal and state courts located in or nearest to Oakland County, Michigan."[68] In light of the necessary expenditure of time and

---

[63] *See* 28 U.S.C. § 1404(a).

[64] *See Thornton v. Toyota Motor Sales U.S.A., Inc.*, 397 F. Supp. 476, 477 (D.C. Ga. 1975) (holding that "[s]ince venue is improper in this court, transfer under 28 U.S.C. ' 1404(a) is foreclosed"); *Nizami v. Woods*, 263 F. Supp. 124, 125 (D.C.N.Y. 1967) ("Section 1404(a) provides a means to accommodate the convenience of the parties by referring a suit to an appropriate forum, but it is inapplicable unless venue is properly laid in the court which is asked to make the transfer.") (citations omitted). *See also JCPenny Life Ins. Co.*, 2002 WL 523568, at *2 (It is the moving party's burden to establish "(1) *that venue is proper in the transferor district*, (2) that the transferee district is one where the action might have been brought, and (3) that the transfer will serve the convenience of the parties and witnesses and will promote the interest of justice.") (quoting *Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, 820 F. Supp. 503, 506 (C.D. Cal. 1992) (emphasis added)).

[65] *Soliman v. L-3 Communications Corp.*, No. C 08-0438 WHA, 2008 WL 5383151, at *4 (N.D. Cal. Dec. 24, 2008) (quoting 28 U.S.C. § 1406(a)).

[66] Section 1406(a) states: "[T]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

[67] *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) ("The problem which gave rise to the enactment of [Section 1406(a)] was that of avoiding the injustice which had often resulted to plaintiffs from dismissal of their actions merely because they had made an erroneous guess with regard to the existence of some elusive fact of the kind upon which venue provisions often turn.").

[68] *See* Docket No. 7, Exs. H and I.

13
Case No.: 11-4865 PSG
ORDER

resources that would be required to re-file this case in Michigan and having determined that federal diversity jurisdiction is proper, the court finds the interests of justice to be well-served by a transfer.

### III. CONCLUSION

Based on the foregoing, the court hereby DENIES Entertainment's motion to dismiss and GRANTS Entertainment's motion to transfer. This lawsuit shall be transferred to the Eastern District of Michigan.

**IT IS SO ORDERED.**

Dated: March 2, 2012

	*Paul S. Grewal*
	PAUL S. GREWAL
	United States Magistrate Judge

14

Case No.: 11-4865 PSG
ORDER